**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARIA CONSUELO CHAVEZ, et al.,

Plaintiffs,

vs. CIV No. 00-423 JC/WWD

STATE OF NEW MEXICO, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, filed July 24, 2001 (*Doc. 43*); and Plaintiffs' Motion for an Order Requiring Defense Counsel to Resolve Dunton Conflicts, filed July 7, 2002 (*Doc. 82*). The Court has reviewed the motions, memoranda and all relevant authorities. Defendants' motion is well taken and is granted. Plaintiffs' motion is not well taken and is denied.

## I. Background

In 1999, Defendant Martin Bochenek began working at the New Mexico Boys' School ("Boys' School") in Springer, New Mexico. As part of his duties, he implemented a new program entitled the EQUIP program. Defendants claim that Plaintiffs' allegations of sexual harassment, retaliation, and other claims stem from their resistance to this newly implemented program, and in essence, are personality disputes with Bochenek. Plaintiffs Chavez, Contreras, Lucero, Smith, and Schipper contend, however, that Defendants Bochenek's and Cruz's oral, written and physical behavior towards them created a hostile work environment, which resulted in retaliation after each

Plaintiff filed her complaint with the Employee Relations Bureau ("ERB") of the Children, Youth and Families Department ("CYFD") and with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff Olga Rodriguez is employed by the private food services contractor for the Boys' School. Her complaints center around a training exercise in which she claims Defendants Koch and Hill injured her in violation of her civil rights, and the allegation that these defendants attempted to replace her with a male friend.

Although the facts largely are not in dispute, Defendants claim that their actions do not rise to the level of actionable offenses. As set forth in the parties' memoranda and Plaintiffs' affidavits, the facts are as follows:

**A.** Maria Consuelo Chavez

Plaintiff Chavez began working at the Boys' School in December 1994 as a Staff Specialist 2B. In early March 1999, she obtained a promotion to Human Resources Administrator Senior. Her new duties concerned personnel related transactions. Pls' Resp. to Dfs' Mot. for Summary Judgment (Pls' Resp.), Exhibit 5 at 2, filed March 18, 2002 (*Doc. 68*). None of these assigned duties centered around the activities addressed by the EQUIP program. *Id.* Beginning in April or May 1999, however, Defendant Bochenek began demanding that she attend the EQUIP training. *Id*. at 22. During this time, Defendant Bochenek began using intimidation tactics towards Plaintiff, including degrading terminology, "looks, gestures and actions." *Id.* at 3.

Such looks, gestures and actions included: (1) Defendant Bochenek telling Chavez that she is part of a "clica;" (2) telling her in a sarcastic and demeaning manner, "I am paranoid, Consuelo;" (3) pretending to be friendly in order to obtain information regarding this suit and then becoming

hostile when Plaintiff refused to divulge any information; (4) asking Chavez in a seductive manner to go trick-or-treating with him and his children; and (4) often giving her angry looks for no apparent reason. *Id*. at 4, 9, 7-8; Dfs' Mem. Brief in Support of Dfs' Mot. for Summary Judgment (Dfs' Mem.), filed June 24, 2001, at 5 (*Doc. 44)*.

In October 1999, Plaintiff filed a complaint with the EEOC. After filing the complaint, Plaintiff contends that Defendants Bochenek's and Cruz's intimidation tactics towards her were in retaliation for the complaint. Some of the instances included: (1) Defendant Bochenek raising his office blinds at 5:00 P.M., so she would know he was watching her; (2) Defendant Bochenek following her in an aggressive and dangerous manner as she was driving on I-25; (3) Defendant Cruz nit-picking and criticizing her work; (4) Defendant Cruz denying Plaintiff access to facility vehicles; (5) Defendant Cruz insisting that she sign out for facility keys when others were not given that mandate; (6) Defendant Cruz refusing her access to the Boys' School grounds after hours when others allegedly had access; (7) Defendant Cruz removing Plaintiff from the task of making daily tape backups; (8) Defendant Cruz placing a photocopy of a newspaper article regarding this suit in each Plaintiff's mail box and later informing all new employees about the litigation; and (9) on May 2, 2000, Chavez and the other Plaintiffs each received, while at work, separate envelopes containing pornographic materials. There is no evidence regarding the sender of the envelopes. *Id*. at 13, 14, 19, 20, 16, 22.

B. <u>Diane Contreras</u>

Diane Contreras began working for the Boys' School in March 1999 as a clinical social worker. In June 1999, upon the implementation of the EQUIP program, Plaintiff attended the mandatory three-day training. During this training, Defendant Bochenek intimidated, ridiculed, and embarrassed her. Dfs' Mem. at 10. Defendants admit that this behavior rose to the level of harassment

based on gender. *Id*.

On June 24, 1999, Plaintiff submitted a charge of discrimination. *Id.* On July 13, 1999, Plaintiff submitted memos regarding sexual harassment to the ERB and to the EEOC. *Id.* Two weeks later, on July 26, 1999, Plaintiff submitted another memo to the ERB and an affidavit to the EEOC. *Id.* Finally, on July 28, an internal investigation was conducted.[1] *Id*.

After Defendant Bochenek assumed his position, Plaintiff obtained a promotion to a Social Worker Supervisor. Though she was assured a commensurate salary, she has yet to see the increase. *See* Pls' Resp., Exhibit 8:2.

After filing the complaint, from October 14 to October 25, 1999, Plaintiff was transferred under Defendant Bochenek's supervision, where he often gave her additional assignments.[2] *Id.* at 2. From October 25 to November 15, Plaintiff's supervisor was Defendant Cruz. *See* Dfs' Mem. at 11. On November 15, 1999, Plaintiff was transferred under the direct supervision of Dr. Gonzales, and again within the chain of command of Defendant Bochenek. While under Defendant Bochenek's chain of command, he made her sign in upon arrival at work, he often overrode or disregarded Plaintiff's decisions, and he gave her lengthy assignments and then would not collect them or say they were irrelevant. *See* Dfs' Mem. at 12; Pls' Resp., Exhibit 8:4, 9.

In March 2000, Plaintiff learned that if she did not answer her phone within three rings, the calls would be transferred to Defendant Bochenek's office. *See* Pls' Response, Exhibit 8:5. Plaintiffs Lucero and Smith had the same occurrence with their extensions. *Id.*

---

[1] Plaintiffs provided the Court with deposition testimony of the investigators, Priscilla Gurule and Carmel Marquez. Yet, the instances that these investigators researched are the same as those that this Court now finds do not to rise to the level of actionable harassment or retaliation.

[2] Where pertinent, Plaintiffs' affidavits fail to state who authorized the transfers.

In April 2000, Plaintiff was in the mail room when Bochenek entered, walked up to her and called her a "****ing bitch." *Id* at 6. In response, Plaintiff quickly left the room. Also in April, 2000, Defendant Cruz accused Plaintiff of possessing a "grand master" key, which Plaintiff denied. Dfs' Mem. at 12. Upon her denials, Plaintiff had to respond in writing to the accusation. *Id*. Two months later, in June 2000, upon Defendants Cruz's and Bochenek's request, Plaintiff received a letter of reprimand. Pls' Resp. at 9.

Finally, in her affidavit, Plaintiff alleges for the first time that Defendant Bochenek sexually propositioned her in the administration building in exchange for not issuing a letter of reprimand. *Id*. at 6.

C. Lori Lucero

Lori Lucero began working at the Boys' School on June 3, 1996 as a social worker associate. In less than two years she was promoted two times resulting in her position as a social worker. As with Plaintiff Contreras, Plaintiff Lucero attended the June mandatory three-day EQUIP training program where Defendant Bochenek verbally abused, intimidated, ridiculed, and embarrassed her. *See* Dfs' Mem. at 13. Such abuse, Defendants admit, rose to the level of harassment based on gender. *Id*.

On July 13, 1999, Plaintiff submitted memos regarding the sexual harassment to the ERB and to the EEOC. *Id*. at 13. On July 26, 1999, she submitted another memo to the ERB and an affidavit to the EEOC. *Id.* at 14.

As part of her claim of sexual harassment and retaliation, Plaintiff states that Defendant Bochenek requested that she receive a letter of reprimand following the filing of her complaint. Pl's Resp., Exhibit 9:2. Plaintiff alleges, and Defendants do not contest, that prior to the issuance of the

letter, supervisors investigated Defendant Bochenek's allegations and determined them to be unsubstantiated, yet Plaintiff none-the-less received the letter. *See* Dfs' Mem. at 14.

In October 1999, Plaintiff was transferred under Defendant Bochenek's chain-of-command. *See* Pls' Resp., Exhibit 9:2. During this time, Plaintiff alleges that Defendant continually demanded paperwork and/or information from her in an intimidating way. *Id.* at 2-3. Defendant Bochenek also altered her job responsibilities to include management duties without an increase in salary. Dfs' Mem. at 14-15.

Further individual allegations by Plaintiff against Defendant Bochenek include: (1) refusing to provide training; (2) returning paperwork for trivial mistakes; (3) Defendant demanding to see Doctors' statements submitted by Plaintiff;(4) being required to submit proof of attendance at training sessions when others were not so required; (5) Defendant rubbing his backside against her in the mail room; (6) Defendant staring at her in a lewd fashion on two occasions; and (7) finding "bitch" written on her mailbox name tag.[3] Pls' Resp., Exhibit 9:4, 10, 5, 11.

Due to these experiences at the Boys' School, her doctor recommended that she seek alternate employment elsewhere. Plaintiff thus voluntarily left the Boys' School. *Id*. at 12.

D. Melanie Schipper[4]

Melanie Schipper began working at the Boys' School in May 1997 as a social worker associate, and in June 1998 received a promotion to social worker. Schipper attended the June 1999 EQUIP training and experienced the same treatment that Contreras and Lucero received from

---

[3] Plaintiff does not specifically state, nor will the Court assume without further evidence, that Defendant Bochenek was responsible for this act.

[4]Plaintiff Schipper did not provide the Court with an affidavit.

Defendant Bochenek. *See* Dfs' Mem. at 18. Such treatment of Schipper, Defendants admit, rose to the level of harassment based on gender. *Id.* Soon after the training, Defendant Bochenek approached Plaintiff and called her the "sweetest southern belle" in a fake southern accent. *Id.*

On July 13, 1999, Plaintiff submitted memos to the ERB and to the EEOC. *Id.* On July 26, 1999, she submitted an additional memo to the ERB and an affidavit to the EEOC. *Id.* at 18-19. On October 14, 1999, after filing her sexual harassment charge against Defendant Bochenek, Plaintiff was transferred under his chain of command. *Id.* Then on October 25, 1999, Plaintiff was transferred under Defendant Cruz's chain of command. A week later, however, she was returned to Defendant Bochenek's chain of command. *Id.* Soon afterwards, Defendant Bochenek changed Plaintiff's job responsibilities to include additional case management duties without further monetary compensation. *Id.* Defendant Bochenek also required her to be responsible for two lodges; whereas no other employee in her position was so required. *Id.*

As further support for her claims, Plaintiff offers several examples she asserts are indicative of sexual harassment and retaliation by Defendant Bochenek: (1) he refused to give her training in case management; (2) he instructed Plaintiff to turn in time sheets when others were not so required; (3) Plaintiff must now sign in at an inconvenient location when she arrives at work; and (4) Defendant routinely returns her work for insignificant and nit-picky items. Pls' First Amended Compl. for Race/Ethnic/Sexual Discrimination, Retaliation, and Reprisal; Creation of a Hostile Work Environment, for Injunctive Relief, and for Punitive Damages, filed June 6, 2000 at 45, 46, 49 (*Doc. 2*).

E. Teresa Sue Smith

Teresa Sue Smith began working at the Boys' School in October 1999 as a psychologist 2A.

As with the previous three Plaintiffs, Smith attended the June EQUIP program where she, too, Defendants admit, was subjected to Defendant Bochenek's harassment based on gender. *See* Dfs' Mem. at 21.

On July 13, 1999, Plaintiff submitted memos to the ERB and to the EEOC. *Id.* On July 20, 1999, she filed a charge of discrimination with the EEOC. *Id.* Then on July 26, 1999, she filed a memo with the ERB and an affidavit with the EEOC. *Id.* Two days later the Boy's School conducted an internal investigation.[5]

On October 14, 1999, Plaintiff was transferred under Defendant Bochenek's chain of command. *Id.* In support of her claims, Plaintiff points to statements by Defendant Bochenek in which he demeaned her intelligence. Pls' Resp., Exhibit 10:2. She further alleges that: (1) he gave her busy and/or extra work; (2) he called for outside audits of her work after she filed this suit; (3) Defendant Bochenek tried to find fault with her work when there was none and would return it for trivial issues, yet he was not so critical of her male counterparts; (4) Defendant Bochenek insisted Plaintiff tell him where she was at all times; (5) he interfered with the therapeutic relationship she had with her clients; and (6) Defendants Bochenek and Cruz demanded her to do work outside of her job description. *Id.* at 6, 5, 7-8, 4, 8.

Plaintiff also states that she received harassing phone calls after she filed suit, though she has not provided the Court with evidence from whom the calls came. *Id.* at 9.

F. <u>Olga Rodriguez</u>

Olga Rodriguez is an employee of Best's, Inc., the food service supplier for the Boys' School. Plaintiff Rodriguez discovered that officials at the school were requesting huge portions of food for

---

[5] Refer to note 1 for an explanation.

picnics that never occurred. She also noticed that officials were taking extra portions of food to which they were not entitled. After successfully putting an end to these actions, Defendant Glen Hill threatened Plaintiff. *See* Pls' Resp., Exhibit 6:3. Plaintiff later learned that Defendant Hill, after threatening her, continually called her supervisor requesting to be considered for Plaintiff's position. *Id.*

Approximately two weeks after the threat, Plaintiff attended a mandatory safety seminar. At this training, Defendants admit that Koch and Hill, who were conducting the seminar, used the training as a pretext to physically attack Plaintiff, resulting in permanent physical injury. Dfs' Mem. at 18.

Plaintiff alleges that Defendant Cruz contacted Best's and falsely accused her of knowingly hiring illegal Mexican nationals. Upon investigation, Best's determined the accusation to be false. *See* Pls' Response, Exhibit 6:4-5.

## III. Standard of Review

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some

metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf,* 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597.

## IV. Discussion

### A. Hostile Work Environment/Sexual Harassment

Title VII of the Civil Rights Act of 1964 proscribes employers from discriminating against "any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1986, the Supreme Court held that hostile work environment based on sexual harassment is a form of discrimination under Title VII. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 73 (1986); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 24 (1993)(J. Scalia concurring); *Harris v. Gates Rubber Co.,* 833 F.2d 1406, 1412-13 (10th Cir. 1987)(recognizing the Supreme Court's holding in *Vinson*.). If the business place atmosphere is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive [or hostile] working environment," Title VII is violated. *Vinson,* 477 U.S. at

65,67. This environment must be one in which a reasonable person would find hostile or abusive. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). Moreover, the severity of the harassment must be based on the "perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.*

Under this standard, not all allegedly offensive conduct is actionable. The"[m]ere utterance of an epithet which engenders offensive feelings in an employee" does not rise to the level of conduct proscribed by Title VII. *Id.* at 67. In the converse, however, conduct need not cause psychological injury to be actionable. *Id.* To help determine whether conduct is actionable, courts should look at its "frequency; its severity; whether it is physically threatening or humiliating, or only an offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In a sexual harassment case, a plaintiff must demonstrate that the conduct by her employer would not have occurred but for her sex. "[A]ny harassment...of an employee or group of employees that will not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." *Hicks*, 833 F.2d at 1415.

In *Harris*, the Supreme Court found sexual harassment of a female employee, as she had been subjected to multiple derogatory remarks and sexual innuendos regarding her gender and her clothing. *Harris*, 510 U.S. at 19. Defendant also had asked plaintiff, in front of others, to go to a motel to negotiate a raise. *Id.* At other times, defendant had asked plaintiff to retrieve coins from his front pants pocket and several times had thrown objects on the ground and then asked plaintiff to pick them up. *Id.*

In the present case, Plaintiffs fail to demonstrate that Defendant Bochenek's actions were

sufficiently severe and pervasive "to alter the conditions of [Plaintiffs'] employment, and create an abusive working environment." *Ebert v. Lamar Truck Plaza*, 878 F.2d 338, 339 (10th Cir. 1989). For instance, in their claims for sexual harassment, only Plaintiff Lucero presented evidence that Defendant Bochenek overtly made two sexual advances and stared at her in a lewd manner.[6] *See* Pls' Resp., Exhibit 9:6-7. Plaintiffs Contreras, Schipper, Smith, and Lucero attended the EQUIP training where Defendants admit that Bochenek's behavior constituted harassment based on gender. Plaintiff Contreras asserts that Defendant Bochenek called her a "****ing bitch," and Plaintiff Schipper states that he once called her the "sweetest southern belle." Unlike *Harris*, these instances, though unpleasant, would not interfere with a reasonable person's work performance, for they do not reek of a sexually hostile working environment, as they were not physically threatening, severe or pervasive.

Plaintiff Chavez contends that Defendant Bochenek's following her on the highway constitutes intimidation and harassment. *See* Pls' Resp., Exhibit 5:14. Although this incident could be deemed a physically threatening action, the Court does not find that it occurred "but for the sex of the employee." *Gross*, 53 F.3d at 1537 (citing *Hicks*, 833 F.2d 1415). Moreover, even under the "totality of the circumstances" test, this act does not make Defendant Bochenek's behavior actionable, for none of the other instances would lead a reasonable person to find the working environment hostile or abusive.

Finally, Defendants Bochenek's and Cruz's behavior cannot be deemed actionable sexual

---

[6] Plaintiff Contreras, for the first time in her affidavit, states that Defendant Bochenek sexually propositioned her. Pls' Resp., Exhibit 8:6. Assuming that this incident occurred, it does not meet the standards to be actionable, for Plaintiff Contreras has not presented any evidence of other sexual advances such that Defendant Bochenek's conduct could be deemed so severe and pervasive as to affect Plaintiff's conditions of employment.

harassment, for a male co-worker took Family and Medical Leave due to his "anxiety and depression over the constant belittling that Bochenek and Cruz did to him." *See* Pls' Resp., Exhibit 5:17. These Defendants, thus, seem not to discriminate between who they wish to intimidate.

B. Retaliation

For a plaintiff's complaint to successfully fall under the aegis of Title VII, she must set forth a prima facia case of retaliation. Specifically, she must demonstrate that: (1) she was engaged in protected opposition to Title VII discrimination; (2) she was subjected to an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Nwagbologu v. Regents of the Univ. of New Mexico*, 2002 WL 532430, *3 (10th Cir. 2002). Upon successful demonstration of a prima facia case, the burden shifts to the employer to prove a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer fulfills this obligation, the burden shifts back to the employee to demonstrate that the employer's reason was pretextual. *Id.* (citations omitted).

The Tenth Circuit liberally defines an adverse employment action, yet it has yet to enunciate a litmus test concerning the requirements necessary to establish such actions. *Powers v. Tweco Products, Inc*, 2002 WL 1225280, at *14 (10th Cir. 2002) (citations omitted). Generally courts make their determinations vis-a-vis a case-by-case approach. *Id*. It is settled, however, that "[m]ere inconveniences or minor alterations in job responsibilities are not adverse employment actions." *Id*. (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).

As examples of situations that do not constitute adverse employment actions, the Tenth Circuit held that an employee's lateral transfer does not constitute such an action, *Flores v. City and County of Denver*, 2002 WL 188956, at *2 (10th Cir. 2002); negative work evaluations are not

adverse employment actions unless they lead to the employee's discharge, *Toth v. Gates Rubber Co*, No. 99-1017, 2000 WL 796068, at *9 (10th Cir. June 21, 2000); and vague and unsupported allegations of retaliatory discharge allegedly due to plaintiff's exercising of his right to free speech do not rise to the level of an adverse employment action. *Nwagbologu*, 2002 WL 532430 at *3. The Tenth Circuit, however, did find an adverse employment action when an employer forced the plaintiff to choose between a demotion and cut in pay or a forced retirement after he testified in his wife's FLSA suit. *Hinsdale v. City of Liberal, Kan.,* 2001 WL 980781, at *5 n.5 (10th Cir 2002).

In the present case, plaintiffs fail to demonstrate any actionable adverse employment actions.[7] For example, Plaintiffs Lucero, Smith and Schipper allege, and Defendants concede, that Defendant Bochenek gave them extra duties without commensurate pay. Pls' Resp., Exhibits 9:3; 10:5; 8:2. Specifically, Plaintiff Schipper asserts that Defendant Bochenek required only her to be responsible for two lodges without any increase in salary. Dfs' Mem. at 18-19. Plaintiffs also complain that Defendant Bochenek often returned their work for insignificant errors; they were required to turn in keys and check in; and overall he intimidated and treated them in an angry manner. Pls' Resp., Exhibits 10:3; 9:10; 5:8, 9:19. Plaintiff Contreras complains that, although she received a promotion after filing her complaint, she has yet to obtain the promised increase in salary. Dfs' Mem. at 19. Plaintiff Contreras, however, fails to demonstrate that the lack of an increase in salary is in response to her protected activity. Plaintiffs also seem to contend[8] that their receipt of envelopes containing

[7]The Court notes that all actions discussed henceforth concern incidents after Plaintiffs filed their EEOC and ERB complaints.

[8]Plaintiffs rarely specifically state which actions they consider to be harassment, retaliation, or discrimination. The Court, thus, must itself make these determinations. Concerning the pornographic materials, Plaintiffs indicate that they were sent both to harass and retaliate. "This [the contents of the envelopes] demonstrates the unrelenting efforts by Defendants to continually harass, intimidate, threaten, belittle, embarrass, and humiliate Plaintiffs. *See* Pls' Resp., Exhibit 9:10.

pornographic materials and Defendant Cruz's placement of the newspaper article in their mailboxes detailing Plaintiffs' suit constitutes retaliation.

Retaliatory conduct, however, other than "discharge or refusal to hire is only proscribed by Title VII when an employer's actions alter the employees' compensation, terms, conditions, or privileges of employment," or "adversely affects [their] status as [] employee[s]." *Sanchez v. Denver Pub. Schs.*, 164 F.3d at 533. Moreover, "not everything that makes an employee unhappy" may be deemed an adverse employment action, for "otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id*. Plaintiffs' facts indicate that although these actions are inconvenient, annoying and bothersome, they have not significantly affected Plaintiffs' employment status, and therefore, do not constitute adverse employment actions under Title VII.[9]

Plaintiffs Contreras and Lucero each received a letter of reprimand. Pls' Resp., Exhibits 8:9; 9:2. In *Powers*, the Tenth Circuit discussed whether such letters are indicative of an adverse employment action. The court concluded that unless plaintiff can produce evidence that the reprimand had any effect on her employment status, the letter does not rise to an adverse employment action. *Powers*, 2002 WL 1225280, at *14. If, however, plaintiff demonstrates that the letter makes

---

[9] Only Plaintiff Lucero voluntarily left her job at the Boys' School. None-the-less, the actions of which she complains do not rise to sexual harassment or retaliation. She cites to three separate sexual encounters with Defendant Bochenek: (1) in the mail room he rubbed the front side of his body against the backside of Plaintiff's; (2) again in the mail room, he stared at Plaintiff in a "lewd and lascivious manner," then rubbed his genitals as she left the room; and (3) one time while attempting to speak with Defendant Bochenek, he did not make eye contact with Plaintiff, as he was too busy looking at her body. Pls' Resp., Exhibit 9:6. These instances, however, are not severe or pervasive enough to constitute sexual harassment. Furthermore, Plaintiff's recitation of incidents allegedly constituting retaliation are similar to the other Plaintiffs' allegations. As such, they do not rise to the level of retaliation. Plaintiff also states that the third incident demonstrates Defendant's hatred of Hispanics. As discussed later, this incident does not meet the standards for racial discrimination.

termination more likely, the warning is indicative of an adverse employment action. *Id*. In the present case, neither Plaintiff was terminated, nor do their affidavits suggest that the warnings had any other adverse affect on their employment status.

**V. Racial Discrimination**

Plaintiffs Chavez, Contreras and Lucero assert that they were subjected to hostile work environment based on racial/ethnic discrimination, in violation of Title VII, as they are Hispanic.

To demonstrate a claim of discrimination based on a hostile work environment, Plaintiffs must demonstrate: (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment; and (2) the harassment was racial or stemmed from racial animus. *Bolden v. PRC, Inc*., 43 F.3d 545, 551 (10th Cir. 1995). To be actionable, plaintiffs must demonstrate "more than a few isolated incidents of racial enmity." *Id*. (citing *Hicks*, 833 F.2d at 1412).

In the present case, these Plaintiffs, as with the "anglo" Plaintiffs, complain of increased workload and nitpicking of their completed assignments by Defendants Bochenek and Cruz. Pls' Resp., Exhibit 8:3-4; Exhibit 9:4 Exhibit 5:19. Specific instances that these Plaintiffs cite to as indicative of racial discrimination include: (1) Defendant Bochenek telling Plaintiff Chavez that she is a member of the "clica," Pls' Resp., Exhibit 5:4; (2) someone scratching out Plaintiff Lucero's name on her mailbox and writing "bitch" in its place, Pls' Resp., Exhibit 9:5; (3) Defendant Bochenek, under his breath, saying "****ing bitch" to Plaintiff Contreras, Pls' Resp., Exhibit 8:6; (4) Plaintiff Contreras, as the only Hispanic female under Defendant Bochenek's command, receiving additional assignments, Pls' Resp., Exhibit 8:2; and (5) Defendant Bochenek accusing Plaintiff Schipper of being a "spic lover." Pls' Resp., Exhibit 9:6.

Due to the sparse nature of these incidents and the fact that certain actions are race neutral

(e.g. "****ing bitch"), Plaintiffs Chavez, Contreras and Lucero fail to produce evidence evincing anything more than a few isolated incidences of racial enmity. As Defendants point out in their memorandum, these Plaintiffs, on the whole, experienced the same treatment as Schipper and Smith, who are Anglo.

**V. Other claims**

Defendants' memorandum sets out arguments against Plaintiffs' alleged other claims: (1) 42 U.S.C. § 1983 violations; (2) failure to adequately train and supervise; (3) injunctive relief (4) respondeat superior; and (5) Olga Rodriguez's vague claims under 42 U.S.C. § 1983, allegations of assault and battery, sex discrimination, interference with employment status and retaliation against a witness. Dfs' Mem. at 32-37. Plaintiffs' response is sufficient to justify the Court's analysis regarding Plaintiffs' Title VII claims. Plaintiffs' other claims, however, are so inadequately represented, much less argued, that the Court refuses to go on a fishing expedition in search of legal analysis and facts to support these claims. *Gross*, 53 F.3d at 1546 ("Sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein. Without a specific reference, '[the Court] will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.'")(citations omitted). Moreover, to meet the summary judgment burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). In the present case, although Plaintiffs provide affidavits, they leave it to this Court to determine how the affidavits are relevant to their allegations in the complaint. Plaintiffs, thus, fail to meet their burden under summary judgment.

## VI. Conclusion

The Court finds Defendants' motion well taken, for Plaintiffs fail to demonstrate the requisite facts necessary for the Court to find any violation of Title VII. Although Defendants, and especially Defendant Bochenek, are not worthy of praise, their actions are not legally cognizable.

The Court further finds that Plaintiffs' other claims are without merit.

Finally, the Court finds that it has jurisdiction over this case, as Plaintiffs admit that they had exhausted their administrative remedies at the time of the initial filing of this case. Pls' Resp. at 24; *Khader v. Asspin*, 1 F.3d 968, 970 (10th Cir. 1993).

## VII. Plaintiffs' Dunton Motion

In *Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.1984), the Second Circuit recognized that after the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (holding that municipalities may be liable under 42 U.S.C. § 1983 for employees' actions taken pursuant to municipal policy), "the interests of a municipality and its employees as defendants in a section 1983 action are in conflict." Not only is the present case not a § 1983 action, but Plaintiffs have utterly failed to demonstrate that there is a conflict of interest among Defendants. The Court thus finds that Plaintiffs' motion lacks merit, and it is denied.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment, filed July 24, 2001 (*Doc. 43*), is well taken, and it is, therefore, **GRANTED**.

IT IS ORDERED that Plaintiffs' Motion for an Order Requiring Defense Counsel to Resolve Dunton Conflicts, filed July 7, 2002 (*Doc. 82*), is **DENIED**.

DATED August 12, 2002.

SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

Dennis W. Montoya, Esq.
Albuquerque, New Mexico

Attorney for Defendants:

Judith C. Herrera, Esq.
Santa Fe, New Mexico